Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. Defendant is a duly qualified self-insured with Managed Health Resources as the servicing agent.
4. The parties stipulated into evidence a North Carolina Industrial Commission Form 22. Based upon the Form 22, plaintiff's average weekly wage was $346.21, yielding a compensation rate of $230.82.
5. The parties stipulated into evidence North Carolina Industrial Commission Forms 18, 19, 33, 33R and 61.
6. The parties stipulated into evidence plaintiff's accident report.
7. The parties stipulated into evidence plaintiff's answers to defendant's first set of interrogatories and request for production of documents to plaintiff.
8. The parties stipulated into evidence the May 7, 1998 recorded statement of plaintiff with Tina House.
9. The parties stipulated into evidence plaintiff's medical records from The Miller Orthopaedic Clinic, Inc., Mercy South Hospital, Mecklenburg Medical Group, Carolinas Medical Center, Pain Care Plus, Southeast Pain Care, Arboretum Urgent Care, Carolina Neurosurgery 
Spine, and Carolinas Healthcare System.
10. The parties stipulated that payments totaling $11,206.95 were made to plaintiff pursuant to defendant's self-funded long-term and short-term disability programs.
11. The issues presented are:
 a) Whether plaintiff suffered a compensable injury by accident or specific traumatic incident arising out of and in the course of her employment with defendant-employer on April 19, 1998?
 b) Whether plaintiff is entitled to any benefits under the North Carolina Workers' Compensation Act?
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 57 year old high school graduate who had worked for nine years in defendant's Housekeeping Department.
2. At the time of her injury, plaintiff's job consisted of emptying trash, vacuuming, dusting, cleaning sinks, toilets and bathtubs, changing beds and mattresses and mopping.
3. Plaintiff had several instances in the 1980's in which she presented to doctors with complaints of right neck pain. However, she received only short-term treatment for those complaints of neck pain. Following a motor vehicle accident in 1995, plaintiff reported to the emergency room for evaluation of neck and shoulder pain. Apart from the aforementioned motor vehicle accident, there is no history of complaints or medical treatment or periods out of work for neck pain during the nine-year span from 1989 until plaintiff's injury of April 9, 1998.
4. Prior to her injury of April 19, 1998, plaintiff had degenerative disc disease, which was mainly asymptomatic.
5. On April 19, 1998, plaintiff began her shift by picking up trash. This job required plaintiff to use both hands to lift heavy plastic trash bags above her waist and dump them into a trash cart. While lifting one of the trash bags that morning, plaintiff felt a sudden, intense pain in her neck.
6. Plaintiff reported her work-related injury to her supervisor, Matt Striffler, on the following day, April 20, 1998, and filled out an accident report on April 21, 1998. Three weeks later, Mr. Striffler filled out the North Carolina Industrial Commission Form 19, outlining plaintiff's complaints.
7. On May 11, 1998, plaintiff gave a recorded statement to adjuster, Tina House, and reported that she had been emptying trash cans and ". . . the pain started shooting. . . . it hurt so bad I was almost crying."
8. Plaintiff presented to Dr. J. P. Griggs, Jr., a family practitioner, on April 19, 1998 complaining of neck pain. Plaintiff was examined that day by a fill-in physician's assistant, Gary Ochs. Dr. Griggs stated in his deposition that some people have neck pain and do not know what caused the injury, that people with degenerative disk disease are more susceptible to cervical injury than the population in general, and that plaintiff's lifting the trash bags could have caused further injury or exacerbated her pre-existing condition.
9. On July 15, 1998, plaintiff presented to Dr. Mark Hartman, an orthopedic surgeon, on referral from Dr. Robert Giedraitis, a physiatrist. Dr. Hartman stated that plaintiff suffered from degenerative arthritis in her cervical back and that plaintiff's lifting of trash bags at work was a probable cause of the sudden onset of pain in her cervical back.
10. On November 29, 1999, plaintiff presented to Dr. Tim Adamson, a neurosurgeon, who stated that plaintiff suffered from degenerative disease in her cervical back, which caused impingement on the nerve root at C5-6, and for which he performed a discectomy and fusion on November 2, 2000. Dr. Adamson also testified that if plaintiff did not have recent symptoms before her sudden onset of back pain at work on April 19, 1998, then her lifting of the trash bags probably exacerbated her pre-existing degenerative disc disease and triggered her symptoms of nerve root irritation.
11. The Deputy Commissioner had the opportunity to observe firsthand the witnesses' demeanor and the intonation of their voices at the hearing. Having weighed the testimony of both parties, Deputy Commissioner Young gave more weight to the testimony of plaintiff. Although recognizing that there were inconsistencies in plaintiff's testimony, the Full Commission declines to reverse the credibility determination of the Deputy Commissioner and finds plaintiff's testimony credible concerning the specific traumatic incident on April 19, 1998.
12. The competent evidence in the record establishes that on April 19, 1998 plaintiff sustained an injury by accident to her back and neck as a direct result of a specific traumatic incident of the work assigned, which was an exacerbation or aggravation of plaintiff's degenerative disc disease.
13. As a result of plaintiff's specific traumatic incident at work, plaintiff was unable to earn any wages in any employment after June 30, 1998. Plaintiff's disability continues to the present time.
14. Plaintiff received short-term and long-term disability payments made pursuant to defendant-employer's self-funded disability program and defendant is therefore entitled to a credit of $11,206.95.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. In order to establish a compensable injury to the back, the employee must prove that the disabling back injury arose out of and in the course of the employment and was the direct result of either an accident or a specific traumatic incident of the work assigned. N.C.G.S. § 97-2(6); Richards v. Town of Valdese, 92 N.C. App. 222,224, 374 S.E.2d 116, 118 (1988), disc. review denied, 324 N.C. 337,378 S.E.2d 799 (1989). Under the specific traumatic incident theory, plaintiff must prove that the injury occurred at a judicially cognizable time, although not necessarily at a specific hour or day. Fish v.Steelcase, Inc., 116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994),cert. denied, 339 N.C. 737, 454 S.E.2d 650 (1995); Richards v. Town ofValdese, supra. Judicially cognizable does not mean that the definition of specific traumatic incident is limited to an instantaneous occurrence. But events which occur contemporaneously, during a cognizable time period, and which cause a back injury, do fit the definition of specific traumatic incident. Fish v. Steelcase, Inc.,supra; Richards v. Town of Valdese, supra at 225, 347 S.E.2d at 118-119. Under the specific traumatic incident theory, plaintiff is not required to prove that the injury arose from an unusual occurrence or departure from ordinary duties. Fish v. Steelcase, Inc., supra; Bradley v. E.B.Sportswear, Inc., 77 N.C. App. 450, 335 S.E.2d 52 (1985).
2. Plaintiff proved by the greater weight of the credible evidence that she sustained a compensable back injury from a specific traumatic incident while lifting a trash bag into her trash cart on April 19, 1998. N.C.G.S. § 97-2(6).
3. As a result of the compensable accident, plaintiff is disabled and is entitled to temporary total disability compensation in the amount of $230.32 per week from April 19, 1998 until the present and continuing until she returns to work or until further Order of the Commission. N.C.G.S. § 97-29.
4. Plaintiff is entitled to have defendant pay for all medical expenses incurred or to be incurred, for so long that such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief or lessen the plaintiff's disability. N.C.G.S. § 97-25; N.C.G.S. § 97-2(19).
5. Defendant is entitled to a credit for disability payments made to plaintiff totaling $11,206.95. N.C.G.S. § 97-42.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to attorney's fees hereinafter provided, defendant shall pay to plaintiff temporary total disability compensation in the amount of $230.32 per week beginning April 19, 1998 and continuing until plaintiff returns to work or until further Order of the Industrial Commission. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees hereinafter provided.
2. Defendant shall pay all medical expenses incurred or to be incurred, by plaintiff as a result of plaintiff's injury sustained April 19, 1998, for so long that such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief and will tend to lessen the period of plaintiff's disability.
3. As plaintiff has not yet reached maximum medical improvement of her back and neck, this Opinion and Award does not address the issue of permanency. However, in the event that the parties should be unable to agree on the amount of compensation for permanent functional impairment, if any, for her back and neck which may be due, either party may request a hearing before the Commission to resolve this issue.
4. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel. Twenty-five percent of the accrued compensation due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel.
5. Defendant is entitled to a credit of $11,206.95 for disability payments pursuant to N.C.G.S. § 97-42.
6. Defendant shall pay all costs.
This the ___ day of September 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/mhb